May it please the Court, my name is Karen Hanks, and I represent SFR Investments Pool 1, LLC. I'd like to reserve three minutes of my time for rebuttal. All right. Please watch the clock. In this case, the agency seeks to expand its powers far beyond what Congress granted it. Congress specifically excluded mortgages held in trust from the agency's general power of succession. This means that when a mortgage held in trust is an issue, 4617J3 of HERA does not apply. And for everything else, 4617J3 does apply, but due process is implicated. Your Honors, you have two documents in front of you that represent the boards that you see here. The first board that I have to my right is a box that represents the function of HERA. So you see in this large box, this represents what the regulated entities had. They could claim Title II, rights, ownership, everything is in the entire box, pre-HERA. Then, once HERA is enacted by Congress, we see a line drawn between the general powers and what Congress specifically accepted from those general powers, which was mortgages held in trust. So on this side of the board, you have all the general powers of B, A through K, the very first power being succession. That's what gives the agency the right to do anything because Congress granted them all of these powers. On the other side of the chart is the mortgages held in trust. And Congress, through subsection 19, specifically excluded mortgages held in trust from all the general powers we see A through K. The only way 4617J3 applies, because it talks about property of the agency, is if the agency succeeded to it. But we can see clearly from the plain language of 4617, Congress said no agency, you do not succeed to mortgages held in trust. Now, how do you deal with the Elmer case, which I recognize is an unpublished decision of this Court? But, you know, Elmer says the plain language does not bar the agency from succeeding to Freddie Mac's interests in the assets. Your Honor, that succession argument was not made in Elmer. So I understand that that Court was referring to whether 4617J3 would preempt. But I don't believe the plaintiff in that matter, Mr. Elmer, made the argument that the agency did not succeed. You think that the agency cannot succeed or hold the mortgages in trust? Are they mutually exclusive in your view? Yes, they are mutually exclusive. And Elmer, amicus, made the argument. I'm sorry, Your Honor? Amicus made the argument. Made the argument that mortgage held in trust is not Freddie Mac's assets and therefore that the agency could not have succeeded in the interest. And in response to that, the Court made the statement that I just quoted. I think the argument more there, Your Honor, was that they were saying Freddie Mac did not own it. Our argument is ownership is irrelevant. In other words, this box represents anything the entities had pre HERA, ownership, title, rights, privileges. But once HERA was enacted, Congress said, no, you will not succeed to the mortgages held in trust. So it's a different argument because ownership is irrelevant in terms of succession. And that's what gives them the ability to assert 4617J3. And in getting back to your question, Your Honor, with respect to being mutually exclusive, it is because we're not saying you're not holding them in trust. Section 19 clearly defines the relationship that the agency will have. In fact, that's the whole purpose of 19. Because Congress excluded mortgages held in trust from the general powers, Congress couldn't leave it in a void. It had to say to the agency and the entities, this is going to be your relationship. So then when you see this is the second board we have up here, here's the full provision of subsection 19. It explains. In subsection 2, it explains. The relationship you will have is you will hold them in trust. It even instructs the conservator, you shall hold them in trust for the benefit of the beneficial owners of such mortgages. And you're going to do it in accordance with the trust agreement. So it is a distinction. Ginsburg. Would you just point me to where you think we see it's an either-or? I mean, how do you get there from the statute? In terms of holding it in trust versus succeeding? Correct. The exception, Your Honor. If you read 4617J3, it says here's all the general powers you get. Right. But number 19, general exception to general powers, mortgages held in trust. In other words, you could read 19 and stop at B where it says mortgages held in trust. That's where Congress explicitly accepted it from the general powers. But then it knew it had to explain what are we going to do with these mortgages held in trust. We can't leave it in a void. We can't just say agency, you don't get anything with them with respect to the powers. So that's where they say the first section says no one can make these mortgages available to satisfy the claims of creditors generally. That's an edict to the world and any court. It cannot be made available. Number two is describing here agency, this is going to be your relationship. You're going to hold them in trust for the benefit of the owners. In other words, everything the agency does on this side of the chart, they're holding the mortgage in trust. It doesn't mean literally in a trust or trust moral. I understand. It means you're holding it for the benefit of the beneficial owners. Everything the agency does on the other side, all those other powers of succession, transfer, sell, take over, take any action, that's for the benefit of the agency and the entities. The two are completely different. That's why Congress made an exception. They wanted to describe the relationship as what's the purpose of it, and they explicitly accepted mortgages held in trust from succession. And because 4617J3 deals with agency of the property, the only way the agency can assert 4617J3 in a case that's dealing with mortgages held in trust is if they succeeded, and they didn't. Congress made it clear. They said, agency, you do not succeed to mortgages held in trust. That's what the exception is. Your Honor, if I may, could I reserve the remainder of my time for rebuttal? You may. Thank you. Thank you, Your Honors. May it please the Court, I'm Michael Johnson. I represent the Federal Housing Finance Agency, and I'm arguing on behalf of all the appellees, this Court should affirm the District Court's grant of summary judgment. This is one of several dozen cases involving substantially the same issue, this clash between the Federal foreclosure bar and Nevada's State foreclosure statute. Probably several dozen understates the number, actually. It could be, Your Honor. There are scores and scores of these, yes. Yes. And scores and scores pending in the District Courts in this case, more than a dozen appeals pending before this Court. And the Court already resolved the primary issue, which is whether the Federal statute preempts the State foreclosure law. And so now we're moving down the menu of arguments. Because of the economic incentives that are at play here, parties like SFR purchased these properties out of foreclosure at pennies on the dollar relative to fair market value. And while these issues are being litigated, they collect rent at market, while the conservatorships who own mortgages that were made at market collect nothing. So the incentive here is to draw the litigation out as long as possible and to ---- What do you think about her argument about the carve-out for the mortgages held in trust? I would point the Court to Judge Friendly's admonition to read the statute, read the statute, read the statute. I thought Judge McKeon's question was quite apt. Where is the inconsistency? We heard my friend, Ms. Hanks, keep saying Congress said agency, you cannot succeed to mortgages held in trust. I would direct the Court to 4617b19b. It's not there. It's not in that language. What 4617b19b says is what the Court said in Elmer. It places those mortgages held in trust, which are the majority of assets that Fannie Mae and Freddie Mac acquire, off limits to Fannie Mae and Freddie Mac's general creditors. And it says, conservator, you don't get to use your extra powers that you have with regard to Fannie Mae and Freddie Mac's other assets, and that's these, transfer assets without any approval or consent. Sell them according to your own discretion, and you decide whether it's in the best interests of Fannie Mae and Freddie Mac, the taxpayer, the Federal Housing Finance Agency. It is an exception. There's no question that mortgages held in trust, the ones that back mortgage-backed securities, are treated differently under HERA, under the conservative statute, than Fannie Mae and Freddie Mac's other assets. But that doesn't mean that Congress said mortgages held in trust aren't subject to any of the conservator's other powers. That would be ridiculous. The conservator has the power to collect obligations and money owed the Fannie Mae and Freddie Mac. Are mortgages held in trust exempt from that power of the conservator? Of course not. The conservator is fully entitled to demand that servicers tender over the money that they owe Fannie Mae and Freddie Mac on the mortgages that back mortgage-backed securities. The conservator has the power to provide by contract for assistance in exercising all its powers. Can it not provide by contract for assistance in handling the mortgages backing mortgage-backed securities pools? That would be extraordinary, because that would mean Fannie Mae and Freddie Mac, who are the conservatorships, who are the conservatorships, that would mean the conservatorships could not use servicers. They would have to service all the mortgages in the mortgage-backed securities pools themselves. So it can't be, it can't be that that decontextualized title of that provision, general exceptions, means mortgages held in trust are somehow off limits to all of the conservators' other powers, but that's not true. What are the powers of the conservator are off limits with respect to these mortgage-backed securities, the so-called right-hand box? In a shorthand, Your Honor, it's the ones that involve managing assets to pay creditors. The conservator normally could liquidate any asset of Fannie Mae and Freddie Mac in its judgment, subject to some statutory constraints on how it would go about doing that, but it doesn't need. It's exempt from any consent or authorization. It is allowed to liquidate asset A to pay creditor B. And what Congress wanted to do was make sure the conservator couldn't just take the mortgage-backed securities, which are really the backbone of the mortgage finance market in the United States, Congress understood how important that market is to the national economy, really the world economy, and said, we are not going to empower the conservator to reach into mortgage-backed securities trusts and use those assets to pay Fannie Mae's electric bill, to pay Fannie Mae's employees. The money going off those mortgages has to go to the owners of the mortgage-backed securities certificates. So all those other conservator powers that let the conservator dispose of Fannie Mae's real estate, let the conservator decide how to manage Fannie Mae's employment, buy furniture, pay the bills, anything it wants to do with the assets, it can do with assets that Fannie Mae and Freddie Mac own in their corporate capacity. But these mortgages that support the mortgage-backed securities, that support the national housing finance market, that really support the national and world economies, those are off limits. So the exception has to be inconsistent with the power for it to apply. And that's where I think your question, Your Honor, was right on point. There's no inconsistency between succeeding to ownership of the mortgages held in trust and holding them for the benefit of the securities holders, which are called the beneficial owners. There's not really a dispute here that the certificate holders have some interest in the mortgages. They get a cash flow interest. But Fannie Mae and Freddie Mac, as trustees of the mortgage-backed securities trusts, have legal title. And as this Court held in the Tower Park case that we submitted in our 28J letter last week, the trustee is the one who's charged with protecting the assets. And as a district court held in the one parcel case, because the issue of who's got the ownership interest in trust property for purposes of invoking a statutory property protection is fairly narrow. It doesn't come up a lot. So that's why we're citing the court to a district court case. But that court looked at the exact issue, because the beneficiary was not an innocent owner in a civil forfeiture situation. The trustee was an innocent owner. And the district court said, the trustee is the one who owns the property for purposes of invoking this statutory protection. That lines up exactly with this case. Fannie Mae and Freddie Mac are the trustees. The conservator has succeeded to all their rights, titles, powers, and privileges. Its ownership interest is the one that matters for purposes of invoking the statutory Federal foreclosure bar that protects conservatorship property. And the — not only is there no textual hook for my friend Ms. Hanks's argument that there's just no textual inconsistency between succeeding and placing the limit — placing those assets off limits to creditors and holding them for the benefit of the certificate holders according to the terms of the agreements creating the trusts. That's what Fannie Mae and Freddie Mac would have to do. So the conservator inherits Fannie Mae and Freddie Mac's responsibilities. And then, of course, the liability of the conservator or receiver, that doesn't really impinge on any powers. It's just a statement of here's what we need to do if there's going to be an action for breach of a trust agreement or something else relating to those mortgage-backed securities pools. So there's really no textual inconsistency between what B-19-B says and the succession provision in B-2. Do you think that — do you think that Elmer, which, of course, is an unpublished decision, do you think that it addresses the issue that you're discussing now? Of course. Of course it does, Your Honor. The — it is true that the argument was raised by an amicus. The panel said, we don't normally do this, but this seems — I think what they were thinking is, this seems important and we'd like to sort of take care of this issue because the statutory argument really doesn't make a lot of sense, and so let's try to resolve that quickly, which is what I urge the Court to do here. But it does. It says very clearly, the plain language of the statute does not prevent the agency from succeeding to Fannie Mae and Freddie Mac's interests in these mortgages held in trust. So it's directly inconsistent with my friend Ms. Hanks's argument. It is unpublished, so it's not binding, but it's certainly valuable for its persuasive force. And I think it does indicate that the panel in the Elmer case thought it was sufficiently important to reach out and address it. And it addressed it correctly. I should say a few words about the importance of getting a published precedential decision here. As I started in the beginning of my remarks, there are dozens of cases pending in the district courts. There are more than a dozen appeals pending in the — Is this across the country or is this specific to Nevada? I'm sorry, Your Honor? Is this across the country or specific to Nevada? Specific to Nevada right now. Okay. Just in Nevada, there are more than 100 cases pending in the district court. And the district court really needs guidance from this court. It needs it on HERA. We've seen how some of the other issues, Bourne Valley, the constitutional issue, has gone a little bit off the rails. And if we can resolve these cases quickly and efficiently with a clear, published, precedential opinion, applying HERA the way Congress intended, that would be enormously beneficial from a judicial economy perspective. I thank the Court for its attention. Thank you. May I ask one question? Yes. I'm sorry. One more question, please. I just wanted to ask a quick question regarding the permanent injunction issue and what your thoughts are. The district court, you know, granted the plaintiff's summary judgment on all of their claims, but that did not mention a permanent injunction. What should this Court make of the injunction? I don't think there is an injunction in place, Your Honor. I think this is a quiet title claim. And so if we get a judgment, the judgment just holds that our lien survived and remains valid. I don't believe any injunctive relief was granted. If the Court wants to make that clear in its decision, I would welcome that. But I don't think there's a need for any further proceeding to make sure that the district court didn't do what doesn't appear in the text of its disposition of the case. So your view is that if you prevail on the merits, there's no need to address the permanent injunction issue? Correct, Your Honor, because if we what would happen next is once our lien, once the validity of the enterprise lien is established, then the next step would be to either negotiate a resolution with regard to the properties or move on to foreclosure. We're not looking for the district court to require or prevent SFR from doing anything with regard to these properties other than recognize the validity of the Fannie Mae and Freddie Mac liens that encumber them. Thank you. Thank you. Thank you, Your Honors.  This is more than just Nevada. This is the agency coming in here trying to extend its powers far beyond what Congress granted it. If you find that they succeeded to mortgage, title, and entrust, you will wipe out the wall that Congress set up through 4617J3. It'll be completely torn down. And that is the problem with the agency's argument. Mr. Johnson stood up here and said, yes, this exception does accept our other powers, A through K, B through K. Yeah, we can't transfer. Yeah, we can't sell. Yes, we can't take over. That is textually impossible, because the very first power is succession. So if you are agreeing that it's a general exception to all of these powers, he has to concede it's an exception to succession. He wants you to write it out. He wants you to write succession out from the general powers as if it exists separately above all the other powers, B through K, and then have you read the statute to say this exception you see in 19 is just exceptions to the other powers, B through K. That is not textually possible. He comes to this Court. He wants you to change the words that you see in 19. He wants you to change the position, and he wants you to change how 4617B2 is written. This Court cannot rewrite the statute, nor can Mr. Johnson. He also claims that this would upend the relationship that the agency and the entities have. That's not true. He is ignoring the fact that subsection 2 explains the relationship. Congress understood that it was accepting from the powers, excluding from the powers, the general powers, including succession, the mortgages held in trust. And the reason why 19 doesn't stop at 19B, mortgages held in trust, period, because Congress knew it had to explain to the agency and the entities, but here's going to be your relationship. And the relationship says it. You're going to still hold these mortgages in trust for the beneficial owners, and you're going to do everything in accordance with the agreement. Mr. Johnson was talking about servicing and how this is going to upend that. No. The entities are going to still do the same thing they were doing pre-HERA and post-HERA. That's what number 2 provides. In fact, under his argument, number 2 would be completely superfluous. If all they were doing with 19 was saying, agency, you can't make the mortgages available to pay your creditors, what would be the reason for number 2? Why would you even need to define the relationship? Because under his interpretation, you would have already succeeded and had all those powers. Congress wouldn't have had to redefine the relationship. That's why this is a but. You get this agency, you get all the powers A through K, but you don't get mortgages held in trust. You don't succeed. That first provision, Your Honors, is not saying to the agency, you can't use the mortgages to pay creditors. You'll see that first provision doesn't even mention the conservator. It's a general prohibition across the world. Yes, it assumes the agency, and yes, it assumes the entities. Certainly, it assumes them and says you cannot use them to pay creditors or your creditors. But it's also more broad than that. They're reading it too narrow. That is an edict to the world, including a court. Even if a creditor from the beneficial owners, any other type of creditor, they cannot be made available. Thank you, Your Honors. Thank you. Thank both counsel for your argument this morning. Very interesting and novel legal issue that you've presented. Thank you for argument and briefing. The case of Federal Home Loan v. SFR is submitted. Our next case for argument will be Wheeler v. City of Santa Clara.
judges: McKeown, Wardlaw, Katzmann